**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50144 |
| *Plaintiff-Appellee*, | D.C. No. 2:21-cr-00491-SB-1 |
| v. | |
| JEFFREY FORTENBERRY, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Argued and Submitted July 11, 2023
Pasadena, California

Filed December 26, 2023

Before:  Gabriel P. Sanchez and Salvador Mendoza, Jr.,
Circuit Judges, and James Donato,* District Judge.

Opinion by Judge Donato

---

* The Honorable James Donato, United States District Judge for the Northern District of California, sitting by designation.

# SUMMARY[**]

**Criminal Law**

The panel reversed former congressman Jeffrey Fortenberry's conviction for making false statements, in violation of 18 U.S.C. § 1001(a)(2), without prejudice to retrial in a proper venue, and remanded.

Federal agents interviewed Fortenberry at his home in Lincoln, Nebraska, and his lawyer's office in Washington, D.C., in connection with an investigation into illegal campaign contributions made by a foreign national through conduit donors. At the time, Fortenberry was a member of the House of Representatives from Nebraska. The federal agents were based in Los Angeles, California, where the illegal contribution activity was said to have occurred. At the end of the investigation, Fortenberry was charged with making false statements during the interviews in violation of Section 1001, but not with a violation of the federal election laws. He was tried and convicted by a federal jury in Los Angeles.

Fortenberry contended that the district court incorrectly denied his motion to dismiss the case because venue was improper in the Central District of California. The district court determined that a Section 1001 violation occurs not only where a false statement is made but also where it has an effect on a federal investigation. The panel concluded that an effects-based test for venue of a Section 1001 offense has no support in the Constitution, the text of the statute, or

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

historical practice. The panel therefore reversed Fortenberry's conviction without prejudice to retrial in a proper venue. The panel did not reach Fortenberry's contention of instructional error.

## COUNSEL

Kannon K. Shanmugam (argued), William T. Marks, and Matteo Godi, Paul Weiss Rifkind Wharton & Garrison LLP, Washington, D.C.; Jing Yan, Paul Weiss Rifkind Wharton & Garrison LLP , New York, New York; Glen E. Summers, Bartlit Beck LLP, Denver, Colorado; John L. Littrell, Jr., Bienert Katzman Littrell Williams LLP, San Clemente, California; Ryan V. Fraser, Bienert Katzman Littrell Williams LLP, Los Angeles, California; for Defendant-Appellant.

Alexander P. Robbins (argued), Assistant United States Attorney, Criminal Appeals Section; James J. Buxton and Susan Har, Assistant United States Attorneys, Public Corruption and Civil Rights Section; Bram M. Alden, Assistant United States Attorney, Criminal Appeals Section Chief; Mack E. Jenkins, Assistant United States Attorney, Criminal Division Chief; E. Martin Estrada, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

DONATO, District Judge:

Federal agents interviewed Jeffrey Fortenberry at his home in Lincoln, Nebraska, and his lawyer's office in Washington, D.C., in connection with an investigation into illegal campaign contributions made by a foreign national through conduit donors. At the time, Fortenberry was a member of the House of Representatives elected to multiple terms by voters in Nebraska's 1st congressional district. The federal agents were based in Los Angeles, California, where the illegal contribution activity was said to have occurred. At the end of the investigation, Fortenberry was charged with making false statements during the interviews in violation of 18 U.S.C. § 1001, but not with a violation of the federal election laws. He was tried and convicted by a federal jury in Los Angeles.

Fortenberry appeals his conviction on two grounds. He contends that the district court incorrectly denied his motion to dismiss the case because venue was improper in the Central District of California. He also appeals a declined jury instruction as error.

The Constitution plainly requires that a criminal defendant be tried in the place where the criminal conduct occurred. The district court determined, and the government urges on appeal, that a Section 1001 violation occurs not only where a false statement is made but also where it has an effect on a federal investigation. We conclude that an effects-based test for venue of a Section 1001 offense has no support in the Constitution, the text of the statute, or historical practice. Consequently, we reverse Fortenberry's conviction without prejudice to retrial in a proper venue.

## BACKGROUND

Former congressman Jeffrey Fortenberry is a Nebraskan who spent decades in elective office.  A resident of Lincoln, Nebraska, he served on the Lincoln City Council.  Beginning in 2004, he was elected to several terms in Congress, representing Nebraska's 1st district.

In October 2015, the Federal Bureau of Investigation (FBI), in conjunction with other federal agencies, began investigating a foreign national suspected of improperly financing several U.S. political campaigns.[1]  This multi-agency investigation was run by the FBI's Los Angeles field office, located in the Central District of California.

Over the course of the investigation, the FBI came to believe that the foreign national had made conduit contributions to Fortenberry's campaign, namely at a fundraiser held for Fortenberry in Los Angeles in 2016.  In June 2018, a cooperating witness placed a telephone call to Fortenberry with an FBI agent secretly listening in.  The witness told Fortenberry that the foreign national was probably the source of $30,000 of donations that Fortenberry had received at the fundraiser.

About nine months later, in March 2019, two federal agents from Los Angeles traveled to Lincoln, Nebraska, and interviewed Fortenberry in his home there.  During the interview, Fortenberry, who did not have a lawyer present, denied awareness of any foreign or conduit contributions to his campaign.  After the interview, Fortenberry retained an attorney who contacted the FBI and was referred to the U.S.

---

[1] Federal election law prohibits foreign nationals from contributing directly or indirectly to a campaign for federal, state, or local office.  *See* 52 U.S.C. § 30121.

Attorney's Office for the Central District of California.  The
attorney set up a second meeting between Fortenberry and
federal investigators that occurred in July 2019 in
Washington, D.C.  During the meeting, Fortenberry said
again that he was not aware of any illegal contributions to
his campaign.

On October 19, 2021, Fortenberry was indicted in the
Central District of California on one count of scheming to
falsify and conceal material facts in violation of 18 U.S.C.
§1001(a)(1), and two counts of making false statements in
violation of 18 U.S.C. § 1001(a)(2).  Fortenberry moved to
dismiss the case for improper venue; the district court denied
his motion.  The case went to a jury trial, and Fortenberry
was found guilty on all counts.   The jury found that
Fortenberry had made false statements in the March 2019
interview in Nebraska and the July 2019 interview in
Washington, D.C.  The district court sentenced Fortenberry
to two years of probation, 320 hours of community service,
and a $25,000 fine.   Fortenberry resigned his seat in
Congress.

## DISCUSSION

## I.  Venue, Vicinage, and Section 1001 Essential Conduct

Fortenberry's main contention on appeal is that venue
was improper in the Central District of California and the
district court should have granted his motion to dismiss on
that ground.  We review *de novo* the legal basis of the district
court's venue decision.  *See United States v. Hui Hsiung*, 778
F.3d 738, 745 (9th Cir. 2015); *United States v. Corona*, 34
F.3d 876, 878 (9th Cir. 1994).

"Questions of venue in criminal cases . . . are not merely
matters of formal legal procedure."   *United States v.*

*Johnson*, 323 U.S. 273, 276 (1944).  They present policy concerns deeply rooted in the Constitution.  "Aware of the unfairness and hardship to which trial in an environment alien to the accused exposes him," *id.* at 275, the Framers drafted the Venue Clause, which "mandates that the 'Trial of all Crimes . . . shall be held in the State where the . . . Crimes shall have been committed.'"  *Smith v. United States*, 599 U.S. 236, 242–43 (2023) (quoting U.S. Const. art. III, § 2, cl. 3).  This command is reinforced by the Vicinage Clause of the Sixth Amendment, which "guarantees 'the right to . . . an impartial jury of the State and district wherein the crime shall have been committed.'"  *Id.* at 244–45 (quoting U.S. Const. amend. VI).

Congress did not expressly designate the venue of a Section 1001 offense, and so the "*locus delicti*," the location of the crime, "must be determined from the nature of the crime alleged and the location of the act or acts constituting it."  *United States v. Anderson*, 328 U.S. 699, 703 (1946) (internal citations omitted); *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) ("[A] court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.").  "To determine the nature of the crime, we look to the essential conduct elements of the offense."  *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012) (internal quotations and citation omitted).

Section 1001 of Title 18 imposes criminal liability on "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact" or "(2) makes any materially false, fictitious,

or fraudulent statement or representation." 18 U.S.C.
§ 1001(a). "A conviction under § 1001 requires the
government to prove beyond a reasonable doubt that the
defendant: 1) made a statement, 2) that was false, and 3)
material, 4) with specific intent, 5) in a matter within the
agency's jurisdiction." *United States v. Selby*, 557 F.3d 968,
977 (9th Cir. 2009).

The question of venue in this case is answered by
determining which of these statutory elements is the
essential conduct of a Section 1001 offense, and which is a
"circumstance element" that is necessary for a conviction but
not a factor in deciding the location of the offense for venue
purposes. *Rodriguez-Moreno*, 526 U.S. at 280 n.4. To
illustrate, in a money laundering case, trial was proper where
the laundering alleged in the indictment had occurred, but
not where the criminal activity generating the illicit currency
(*i.e.*, the unlawful distribution of cocaine) had taken place,
because the relevant statutes "interdict[ed] only the financial
transactions . . . [and] not the anterior criminal conduct that
yielded the funds allegedly laundered." *United States v.
Cabrales*, 524 U.S. 1, 3–4, 7 (1998). In other words, "[t]he
existence of criminally generated proceeds was a
circumstance element of the offense but the proscribed
conduct—defendant's money laundering activity—occurred
'"after the fact" of an offense begun and completed by
others.'" *Rodriguez-Moreno*, 526 U.S. at 280 n.4 (quoting
*Cabrales*, 524 U.S. at 7). In drawing this distinction between
essential conduct elements and circumstance elements here,
our reading of Section 1001 is guided, but not limited, by the
principle that the verb or verbs used in a criminal statute have

"value as an interpretive tool" to "determine the nature of the substantive offense." *Id*. at 280. [2]

The text of the statute plainly identifies the essential conduct of a Section 1001 offense to be the making of a false statement. As the Tenth Circuit has observed, Section 1001(a)(2) "does not contain a venue clause, nor is there any language suggesting any 'essential conduct element' other than making a false statement." *United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011) (quoting *Rodriguez-Moreno*, 526 U.S. at 280). It is the act of uttering a false statement that is the criminal behavior essential to liability under Section 1001.

The district court, citing *United States v. Salinas*, 373 F.3d 161, 166–67 (1st Cir. 2004), and *United States v. Coplan*, 703 F.3d 46, 79 (2d Cir. 2012), went a step further to hold that materiality was also an essential conduct element. It concluded that venue could properly include any "district in which the effects of the false statement [were] felt." *Salinas*, 373 F.3d at 167. This was because materiality, in the district court's view, necessarily depends on how a listener would perceive the utterance, wherever the listener might be located.

The government urges the same analysis here. It argues that the district court was right to hold that materiality is an "essential conduct element" of Section 1001, and because conduct is "often defined by its effects," there is "nothing anomalous about prosecuting a false statement based on the

---

[2] Neither party has suggested that the venue analysis under Section 1001(a)(2) differs from the analysis under Section 1001(a)(1), at least with respect to the facts presented in this case. For the purposes of resolving this appeal, the Section 1001(a)(2) analysis is dispositive.

location of the government action that the statement could potentially influence.'"

This argument misses the mark.  It is certainly true that Congress did not intend to criminalize trivial falsehoods under Section 1001, which the materiality requirement addresses.  Materiality is a key element of the statutory definition of the crime that prosecutors must prove, with all the other elements, to obtain a conviction.  *See Mathis v. United States*, 579 U.S. 500, 504 (2016) ("'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'") (quoting Black's Law Dictionary 634 (10th ed. 2014)).

But the inquiry that determines venue is different.  It turns on the action by the defendant that is essential to the offense, and where that specific action took place.  Materiality is not conduct because it does not require anything to actually happen.  We have previously held that materiality requires only that a statement have the capacity to influence a federal agency.  As we stated:

> [T]he materiality requirement of a § 1001 violation is satisfied if the statement is *capable* of influencing or affecting a federal agency.  The false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material.  In other words, the "test is the *intrinsic* capabilities of the false statement itself, rather than the possibility of

> the actual attainment of its end as measured
> by collateral circumstances."

*United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998) (internal citations omitted) (emphasis in original).

We have made a similar point in other Section 1001 cases. *See United States v. King*, 735 F.3d 1098, 1108 (9th Cir. 2013) ("A misstatement need not actually influence the agency decision in order to be material; propensity to influence is enough."); *see also United States v. Green*, 745 F.2d 1205, 1208 (9th Cir. 1984) ("Under section 1001, the false statement need not be made directly to the government agency; it is only necessary that the statement relate to a matter in which a federal agency has power to act."); *United States v. King*, 660 F.3d 1071, 1081 (9th Cir. 2011) ("A false statement need not be made to a federal agent to support a conviction under § 1001(a)(2)."). The upshot of our prior holdings is that the false statement offense is complete when the statement is made. It does not depend on subsequent events or circumstances, or whether the recipient of the false statement was in fact affected by it in any way.

Consequently, materiality is not an essential conduct element of a Section 1001 violation. The Supreme Court's holding in *Rodriguez-Moreno* does not compel a different result. There, the Court vacated on venue grounds a conviction under 18 U.S.C. § 924(c)(1) for using or carrying a firearm "during and in relation to any crime of violence." The crime of violence in that case was a kidnapping, and the Third Circuit had determined that venue was proper only in the district where the defendant used or carried a firearm, and not in the districts where the kidnapping occurred. *Rodriguez-Moreno*, 526 U.S. at 278. The Supreme Court reversed. It concluded that using and carrying a firearm, as

well as the related crime of violence, *i.e.*, the kidnapping, were both essential conduct elements of Section 924(c)(1). *Id*. at 280–81 ("Section 924(c)(1) criminalized a defendant's use of a firearm 'during and in relation to' a crime of violence; in doing so, Congress proscribed both the use of the firearm *and* the commission of acts that constitute a violent crime." (emphasis in original)).

Section 1001 is different. It proscribes the act of making a materially false statement. Materiality is not separate conduct akin to kidnapping or another action by a criminal defendant, and so cannot play a role in determining the *locus delicti* for purposes of venue.

## II.  Decisions of Other Circuits

The government says there is a "wall" of circuit authority in its favor, to the effect that "the essential conduct prohibited by § 1001(a)(2) is the making of a *materially* false, fictitious, or fraudulent statement." *Coplan*, 703 F.3d 46, 79 (2d Cir. 2012) (emphasis added); *see also United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329 (4th Cir. 2012); *United States v. Ringer*, 300 F.3d 788, 791 (7th Cir. 2002). These courts concluded that, because "the essential conduct constituting the offense inherently references the effects of that conduct," *Oceanpro*, 674 F.3d at 329, venue is proper where the effects of the false statements may be felt, namely wherever the relevant investigation or official proceeding is located.

This "wall" is less imposing than the government would have it because the Tenth and Eleventh Circuits have reached the same result we reach here. *Smith*, 641 F.3d at 1207; *United States v. John*, 477 F. App'x. 570, 572 (11th Cir. 2012) (unpub.). It is also the case that the Supreme Court has left open the broader questions of whether and

when an effects-based venue might be permissible. *See Rodriguez-Moreno*, 526 U.S. at 279 n.2 ("The government argues that venue also may permissibly be based upon the effects of a defendant's conduct in a district other than the one in which the defendant performs the acts constituting the offense. . . . [W]e express no opinion as to whether the Government's assertion is correct.").

The logic of the circuit cases cited by the government is questionable for all the reasons already discussed. The Second Circuit upheld venue in New York for false statements made in Tennessee because "[p]roving the materiality of [the defendant's] false statements in Tennessee necessarily requires evidence that those statements were conveyed to or had an effect on the IRS investigators working in the Southern District of New York." *Coplan*, 703 F.3d at 79 (citing *Oceanpro,* 674 F.3d at 329). Why that is "necessarily" so is left unsaid, other than a passing remark to the effect that it just makes sense. *Id*. *Coplan* is also in tension with *United States v. Rodgers*, 466 U.S. 475 (1984), which held that a false statement to the FBI need not affect an existing investigation to run afoul of Section 1001. In addition, while the Second Circuit in *Coplan* recognized that a defendant's liability under Section 1001 depended on the "capacity of [his] statements to influence the decisionmaking body at issue," 703 F.3d at 79, it nonetheless thought that proof of actual effect would be required. We have concluded otherwise in *Service Deli*, 151 F.3d at 941, and similar cases.

In *Oceanpro¸* the Fourth Circuit analogized Section 1001 to the Hobbs Act and obstruction-of-justice statutes to affirm a Section 1001 conviction in Maryland for false statements made in the District of Columbia. *See Oceanpro*, 674 F.3d at 329–30. The court stated that, "just as Congress defined

the effects of conduct in the Hobbs Act and 18 U.S.C. § 1503, it defined the effects in § 1001 to include the element of materiality," and that "proving materiality necessarily requires evidence of the existence of the federal investigation in Maryland and the potential effects of [the defendant's] statement on that investigation." *Id.* at 329. The court determined that venue was proper because "the District of Maryland had a substantial connection to [the defendant's] conduct and to the charges based on that conduct against him." *Id.*

This discussion is not persuasive. The analogy of Section 1001(a)(2) to the Hobbs Act or obstruction of justice is doubtful. For example, "in a prosecution under the Hobbs Act, venue is proper in any district where commerce is affected because the terms of the statute itself forbid *affecting commerce* in particular ways." *United States v. Bowens*, 224 F.3d 302, 313 (4th Cir. 2000) (citing 18 U.S.C. § 1951(a) (punishing anyone who "in any way or degree obstructs, delays, or affects commerce" by robbery)). In a similar vein, the obstruction of justice statute expressly prohibits "endeavors to influence, obstruct, or impede, the due administration of justice," 18 U.S.C. § 1503(a), and so venue might be proper in the jurisdiction where the affected judicial proceeding is being held, *see United States v. Smith*, 22 F.4th 1236, 1243–44 (11th Cir. 2022) (discussing *United States v. Barham*, 666 F.2d 521 (11th Cir. 1982)).

To be sure, Section 1001, the Hobbs Act, and the obstruction statute contemplate that the proscribed conduct might have an effect on something else (a matter within the jurisdiction of the executive, legislative, or judicial branches; interstate commerce; the administration of justice). But that is where the similarities end. The Hobbs Act expressly forbids conduct affecting commerce in

particular ways, and the obstruction statute conduct affecting court cases. Section 1001, by contrast, proscribes making materially false statements—not actually affecting or interfering with a federal agency's investigation through the making of the statements.

The likelihood of highly problematic venue outcomes is another reason to decline the government's effects test. Consider the facts here. An investigation was staffed by agents in California. In connection with the investigation, the agents traveled to Nebraska and Washington, D.C. to interview Fortenberry, who made false statements in those locations. The only connection between Fortenberry and the Central District of California, where he was tried and convicted, was that the agents worked in a Los Angeles office. What if the investigation had been conducted by federal agents in Los Angeles and Oklahoma? What if the government had transferred the investigation to agents in Massachusetts? What if an investigating agent simply moved from Los Angeles to Hawaii for personal reasons but maintained a lead role in prosecuting the case? What if the government chose to base every single Section 1001 investigation in Washington, D.C., where federal agencies are headquartered? The government's effect test would say that venue is proper in any one of those locations, irrespective of where the false statement was actually made. This would be an odd and troubling result for an offense that does not require an actual effect on the investigators.

This outlandish outcome cannot be squared with the Constitution. The Venue and Vicinage Clauses command that a trial be held where the crime was committed. This is not necessarily a boon to a defendant. Even though the "most convenient trial venue for a defendant would presumably be where he lives, the Venue Clause is keyed to

the location of the alleged 'Crimes,'" and "does not allow variation for the convenience of the accused." *Smith*, 599 U.S. at 243 (cleaned up). But the clauses equally "*preclude* trial" in a locale where the crime did not occur. *Id*. at 244 (emphasis in original).

The Venue and Vicinage Clauses may not be disregarded simply because it suits the convenience of federal prosecutors. The government emphasizes that (1) Fortenberry's fundraiser where the conduit contributions were made was held in Los Angeles, and (2) he knew when his counsel set up the meeting in Washington, D.C. that the investigation was being conducted by the U.S. Attorney's Office in the Central District of California. But the location of investigators in the Central District, or the presence there of witnesses to the campaign contribution events, do not speak to the *locus delicti* of Fortenberry's Section 1001 offenses.

So too of the fact that Fortenberry was aware, at the time of his interview in Washington, D.C., that his statements would be taken back to and analyzed by the U.S. Attorney's Office in the Central District of California. We are not at liberty to create a new temporal element for Section 1001— tied to defendant's awareness at the time the statement at issue was made—that is not evident in the plain text of the statute. Moreover, a complex case may involve investigators spread across several jurisdictions. To take again the Los Angeles and Oklahoma scenario, adding a temporal element would still have permitted Fortenberry to be tried in Oklahoma simply because an investigator based there happened to be sitting in Fortenberry's living room in Nebraska when he spoke to the agents.

### III. Continuing Offenses

As an alternative approach, the government suggests that venue was proper in the Central District of California under 18 U.S.C. § 3237(a), because communications can be prosecuted as "continuing offenses" that "span space and time." We disagree.[3]

To start, the government's reliance on Section 3237 simply begs the question of venue under Section 1001. Section 3237 permits the prosecution of "any offense against the United States begun in one district and completed in another, or committed in more than one district . . . in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). This text says nothing about where a Section 1001 defendant like Fortenberry began or completed the offense. It merely invites the next step of determining the essential conduct of a Section 1001 crime. As discussed, this analysis does not come out in favor of the effects test the government advocates here.

The government's heavy reliance on our decision in *United States v. Angotti*, 105 F.3d 539 (9th Cir. 1997), is also misplaced. The district court did not cite *Angotti*, but it is a centerpiece of the government's case on appeal. *Angotti* involved an appeal, on venue grounds, of a conviction under 18 U.S.C. § 1014, "which punishes anyone who 'knowingly makes any false statement . . . for the purpose of influencing . . . the action' of a federally insured institution." *Id*. at 542. The defendant made false statements to a financial institution through an agent in the Northern District of California, but was tried and convicted in the Central District

---

[3] The district court did not reach the question whether venue was proper under the government's continuing offense theory.

of California where the institution was located.  *Id*. at 541.
The panel concluded that a false statement under Section
1014 was a continuing offense because "the act of making"
the false statement continued until the statements were
received by the person whom they were ultimately intended
to influence.  *Id*. at 543.

*Angotti* is readily distinguishable from the circumstances
here.  Section 1014 expressly contemplates the effect of
influencing the action of a financial institution.  No such
language is used in Section 1001.  To determine whether a
statement is misleading in a *material* way, we probe the
"*intrinsic* capabilities of the false statement itself, rather than
the possibility of the actual attainment of its end as measured
by collateral circumstances."  *Serv. Deli Inc.*, 151 F.3d at
941 (citing *United States v. Salinas-Ceron*, 731 F.2d 1375,
1377 (9th Cir. 1984), *vacated on other grounds by* 755 F.2d
726 (9th Cir. 1985)).  Further, we have distinguished *Angotti*
for this reason in other criminal venue cases involving
conceptually similar statutes.  *See, e.g., United States v.
Marsh*, 144 F.3d 1229, 1242 (9th Cir. 1998) ("The problem
with *Angotti* as analogy is that the crime of endeavoring to
impede the IRS is complete when the endeavor is made.").

As the government points out, there certainly are crimes
that may be prosecuted where their effects are felt.  *See, e.g.,
Palliser v. United States*, 136 U.S. 257, 265–66 (1890) ("It
is universally admitted that, where a shot fired in one
jurisdiction strikes a person in another jurisdiction, the
offender may be tried where the shot takes effect, and the
only doubt is whether he can be tried where the shot is
fired."); 18 U.S.C. § 3236 ("In all cases of murder or
manslaughter, the offense shall be deemed to have been
committed at the place where the injury was inflicted, or the
poison administered or other means employed which caused

the death, without regard to the place where the death occurs."). But those situations are markedly different from a Section 1001 offense, for which no statute nor universal recognition permits a prosecution where the effects of a statement are felt, and serve only to illustrate that Congress is well equipped to identify the circumstances in which an effects-based venue rule is appropriate. Congress did not deem Section 1001 to be such a situation.

## IV. Historical Practices and Traditions

Our holding today is in line with our national historical practices and traditions with respect to venue. *See United States v. Gaudin*, 515 U.S. 506, 515 (1995) ("We do not doubt that historical practice is relevant to what the Constitution means by such concepts as trial by jury.").

The Supreme Court recently examined the history of the Venue and Vicinage Clauses, and that discussion is relevant here. As the Court stated:

> [T]he relevant starting point . . . is the common-law "vicinage" right, which presumptively entitled defendants to a jury of the "neighbourhood" where the crime was allegedly committed. 4 W. Blackstone, Commentaries on the Laws of England 344 (1769) (Blackstone). As a practical matter, this right imposed a venue requirement: trials needed to be held at the location where "the matter of fact issuable" allegedly occurred to allow the "Inhabitants whereof" to serve on

the jury.  1 E. Coke, Institutes of the Laws of England § 193, at 125 (1628) (Coke).

…

There is no question that the founding generation enthusiastically embraced the vicinage right and wielded it "as a political argument of the Revolution."  Prior to the Revolution, Parliament enacted measures to circumvent local trials before colonial juries, most notably by authorizing trials in England for both British soldiers charged with murdering colonists and colonists accused of treason.  The Continental Congress and colonial legislatures forcefully objected to trials in England before loyalist juries, characterizing the practice as an affront to the existing "common law of England, and more especially to the great and inestimable privilege of being tried by . . . peers of the vicinage."  The Declaration of Independence also denounced these laws, under which, it said, British soldiers were "protect[ed] . . . by a mock Trial" and colonists were "transport[ed] . . . beyond the Seas to be tried for pretended offences."

*Smith*, 599 U.S. at 246–47 (footnotes omitted).  Justice Story also noted that the Venue Clause operates to protect criminal defendants from being "dragged to a trial in some distant state" that bears little or no connection to a controversy and then "subjected to the verdict of mere strangers."  3 J. Story, Commentaries on the Constitution of the United States § 1775, at 654 (1st ed. 1833).

Relevant historical practices in perjury prosecutions supply useful insights in a context close to Section 1001. By statute and at common law, perjury prohibits material false statements. *See Bronston v. United States*, 409 U.S. 352, 357 (1973) ("The words of the statute confine the offense to the witness who 'willfully . . . states . . . any material matter which he does not believe to be true.'") (quoting 18 U.S.C. § 1621(1)); *Anonymous*, 1 F. Cas. 1032, 1036 (Washington, Circuit Justice, C.C.D. Pa. 1084) (No. 475) ("[T]he common law description of perjury is, a false oath taken in some judicial proceeding in a matter material to the issue."). The prevailing rule is "that the crime of perjury in an affidavit is complete the moment the oath is taken with the necessary intent. It is immaterial and irrelevant that the false affidavit is never used." *Steinberg v. United States*, 14 F.2d 564, 567 (2d Cir. 1926); *see also United States v. Noveck*, 273 U.S. 202, 206 (1927) ("The crime of perjury is complete when the oath is taken with the necessary intent, although the false affidavit is never used."); *Commonwealth v. Carel*, 105 Mass. 582, 586 (1870) ("The perjury is complete when the oath is taken, whether the criminal effects his purpose or not.").

Sir Lloyd Kenyon, Lord Chief Justice of the King's Bench, reached similar conclusions in 1797:

> The affidavit, on which the perjury is assigned, might have been sworn in a distant part of the kingdom; it might have been sent up by the post, and detained in the hands of any person here for some time; and according to the doctrine urged on behalf of the defendant, the guilt or innocence of the person making the affidavit in the country is

> to depend on the circumstance of the person
> into whose hands it comes, bringing it
> forward.  But surely the guilt of the party
> cannot depend on the act of another person,
> when all that he had to do has been already
> consummated.  In the instance of making an
> affidavit in the country the party is not to be
> indicted here where the affidavit may happen
> to be used, but in the county where the
> offence was complete by making the false
> oath.

*R v. Crossley* (1797) 101 Eng. Rep. 994, 996; 7 T.R. 315 (KB) 318–19 (Lord Kenyon CJ).

Consequently, history confirms what the Constitution commands.  The founding generation had a deep and abiding antipathy to letting the government arbitrarily choose a venue in criminal prosecutions.  Implying an effects-based test for venue in Section 1001 cases, when Congress has not so specified, would allow just that, in derogation of our historical principles.  Because a Section 1001 offense is complete at the time the false statement is uttered, and because no actual effect on federal authorities is necessary to sustain a conviction, the location of the crime must be understood to be the place where the defendant makes the statement.

## V.  Materiality Jury Instructions

Fortenberry contends that the district court erred by declining to adopt his additional proposed instruction to the jury that "a false statement is not material merely because it causes the government to investigate the veracity, truth, or falsehood of the statement itself."  Because we hold that

Fortenberry was tried in an improper venue, we do not reach this contention of instructional error.

## CONCLUSION

Fortenberry's trial took place in a state where no charged crime was committed, and before a jury drawn from the vicinage of the federal agencies that investigated the defendant.   The Constitution does not permit this. Fortenberry's convictions are reversed so that he may be retried, if at all, in a proper venue.  *See Smith*, 599 U.S. 236. The case is remanded for further proceedings that are consistent with this decision.

**REVERSED.**